*Cofer, for appellants.*

———, *for appellee.*

---

MARY L. PECANTET AND OTHERS *v.* W. P. GRAYSON, ETC.

**Wills—Mental Capacity of Testatrix.**

The evidence was held to show that testatrix, at the time of the execution of her will, was not of disposing mind.

APPEAL FROM HENDERSON CIRCUIT COURT.

December 10, 1872.

OPINION BY JUDGE PRYOR:

Mrs. Eliza B. Atkinson, whose alleged will is the subject of this controversy, removed with her husband, Amos A. Atkinson, to Graves county, in this state, and settled near the town of Mayfield in about the year 1831. She seems to have been a woman of superior accomplishments, attractive in her manner and person and for many years an ornament to the social circle in which she moved.

Her husband died in the year 1857, and for a few years prior to his death it was ascertained by the friends of the family that she was addicted to the use of ardent spirits; that this fondness for liquor increased upon her to such an extent that she was often seen much intoxicated. The death of her husband, instead of checking this immoral conduct on her part, seems in connection with the constant use of stimulating drinks to have developed other passions over which she had no control. She was then upwards of sixty years of age, dressed in as fashionable and gaudy colors as any of the young ladies of the neighboring town, made love to the young men, and conducted herself in such an unbecoming, and frequently

indecent manner, as led all who knew her, not only to believe, but to know, so far as evidence could be convincing, that the woman of former years, so remarkable for her intelligence and culture, was then wrecked in intellect, and a monomaniac on the subject of making her will, and getting her husband. A little flattery and attention would induce her to devise or promise to give the whole of her estate, and she was constantly offering to deed or will it to those she thought could be induced to marry her. The testimony of her physicians indicates that this affection for men was the off-spring of a passion produced from a disease peculiar to her sex. These passions for men and ardent spirits continued to increase so long as she remained in the county of Graves and all the witnesses consisting, some of them, of the most eminent lawyers of that part of the state, as well as physicians, who had known her when neither her intelligence nor sanity could be questioned, concur in saying that she was incompetent at the date of the alleged will to make any valid disposition of her property.

She left Mayfield in the year 1861 and went to the state of Virginia, where she remainded for several months, and in 1862 returned from Virginia to Henderson, Ky., where the writing in controversy was executed.

Several witnesses in Virginia state that they discovered no want of intellect on the part of the old lady, whilst in that State or any evidence that she was too fond of stimulating drinks. One witness, a lawyer by the name of Cabell, speaks of having conversed with her frequently, and in his opinion has no doubt of her capacity to make a will. The interviews he had with Mrs. Atkinson were at his fathers, and at the residence of a man by the name of Hunnicutt, who also speaks of her entire capacity to make a will, says that she drank too freely, and the liquor had to be concealed from her. Dillard and Martin of the same State saw her in 1862 whilst in Virginia and she conducted herself so improperly at the home of the father of Dillard that she was requested to leave and go to a hotel. These witnesses say, that she was constantly under the influence of opium and whiskey. Whether this be so or not, the Virginia witnesses, Cabell, Hunnicutt, Dillard and Martin, all concur in stating that she wanted them to write her will, intending to dispose of her property either to her Virginia relations or to those whom she desired to draft the instrument. She visited

scarcely a single friend, relative or stranger whilst in that State, that she did not want such a writing prepared, and at each time making a different person the object of her bounty.

She left Virginia in company with a young man by the name of Spooner, an entire stranger and in no wise related, and to him she made a deed of gift of all her landed estate in Kentucky. When the two reached Kentucky, she pronounced the deed a forgery and this it seems terminated the young mans claim upon it.

On her way from Virginia she stopped at a hotel at Henderson, Kentucky, and there sent for Robert Cabell, whom she had never seen before, and when he called to see her she at once proposed to bestow upon him by gift all her imaginary wealth. He refused to accept it and she then left for Paducah, where she remained a few days, and again returned to Cabell's, in Henderson, and made the deed to the latter, giving him her estate. She left Cabell's on a visit to Colonel Grayson's family, who lived but a short distance from Henderson, and whilst there called to see D. Watson's family, and being struck, doubtless, with the appearance of young Watson, or by reason of the kindness and attention paid her whilst there by the family, concluded to annul the deed to Cabell, and give to young Watson a thousand dollars out of her estate. She left Watson's and returned to Colonel Grayson's, where in a few days or weeks the will in controversy was executed.

The witnesses for the appellees are not only thruthful, but intelligent, and give what they believe, a correct history of this old lady's mental condition, and although her conduct whilst in Henderson was rather novel and singular in regard to the disposition of her property, when disconnected with the other proof might not create any suspicion in the minds of some as to her want of intellect, still when connected with her past history, as developed by the uncontradicted statements of the many witnesses who had known her for many years her conduct and actions in Henderson with reference to her property but adds strength to the conviction that when she executed the paper in controversy she was incompetent, by reason of the unfortunate condition of her mind, to make any valid disposition of her property.

Her fondness for men had ceased with the rapid decline of her whole physical system. She was then seventy years of age, weak, unhealthy, and suffering from disease that was about terminating

her existence, and whilst some of her passions evidencing a failing, or ruined intellect had subsided, still the inordinate desire to give and dispose of her imaginary wealth seems never to have left her. The will itself bears evidence of the disordered condition of her mind, but we deem it wholly unnecessary to allude to any other evidences of her want of mental capacity, being well satisfied that at the date of the paper in controversy, she was incompetent to make any valid disposition of her estate.

Wherefore it is now adjudged that the writing purporting to be the will of Eliza B. Atkinson is not her last will and testament.

The judgment of the Court below is reversed and the cause remanded with directions to the Court below to enter the mandate herein and certify the same to the Henderson County Court that it may be entered upon the records of that Court, and for further proceedings consistent herewith.

*Turner & Trafton, for appellants.*

*R. K. Williams & Vance, for appellees.*